C. F. HARMS COMPANY, Appellant, *v.* LEONHARD MICHEL BREWING COMPANY, Respondent.

Corporations — guaranty — ultra vires — agreement by vice-president and general manager of corporation guaranteeing bills incurred by a company of different name but in reality the corporation itself — when such agreement not ultra vires.

The jury could have found that the defendant company owned and was rightfully operating upon its water front a dumping board from which refuse was discharged into scows and so removed. It conducted this business under the trade name of Bond Development Company. Plaintiff is a company engaged in chartering scows. Upon receiving an order from the so-called Development Company for scows to be used in its business it was told of the relations of the latter company and the defendant. Later, at the plaintiff's request, the general manager of the defendant, in its name, signed an agreement that it would guarantee payment of bills for scows chartered on defendant's account to be used in connection with Bond Development Company. Plaintiff thereupon furnished scows, and receiving no pay therefor brings this action. The complaint was dismissed apparently on the ground that the guaranty was never authorized by the directors of the defendant, and that even "if it had been, it was clearly *ultra vires* of the purpose for which defendant was incorporated." *Held*, error. This agreement was not an attempt on the part of a corporation to guarantee the debts of a third person. The Development Company was the defendant. For the debts of the Development Company the defendant was primarily liable. There is no reason why it might not agree to pay its own debts and be liable on the promise. If so, under the facts as developed, there was no doubt as to the authority of the general manager to sign the agreement, and within the agreement the scows were chartered "on account" of the defendant "to be used in connection with Bond Development Company."

*Harms Co. v. Michel Brewing Co.*, 183 App. Div. 886, reversed.

(Argued February 27, 1920; decided March 16, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 20, 1918, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George V. A. McCloskey* and *James A. Martin* for appellant. The appellant presented evidence that was within the issues and required the submission of the case to the jury, which could properly find that the scows were chartered for the respondent's account under the guaranty. (*Sundheimer* v. *City of ·New York*, 176 N. Y. 495; *Place* v. *N. Y. C. & H. R. R. R. Co.*, 167 N. Y. 345; *Plyer* v. *German-American Ins. Co.*, 121 N. Y. 689; *Southern Ry. Co.* v. *Gray*, 241 U. S. 333; *Crook* v. *Fidanque*, 59 Misc. Rep. 178; *Eppens, Smith & Wiemann Co.* v. *Littlejohn*, 164 N. Y. 187; *C. T. P. Mills Co.* v. *Village of Carthage*, 200 N. Y. 1; *Fox* v. *Coggeshall*, 95 App. Div. 410; *M., etc., Ry. Co.* v. *Jurey*, 111 U. S. 584; *Trustees of East Hampton* v. *Vail*, 151 N. Y. 463; *Lamb* v. *Norcross Bros. Co.*, 208 N. Y. 427.) The agreement in suit, upon the evidence presented, was in furtherance of the respondent's authorized business and the defense of *ultra vires* has no application to the facts which the jury might find from the evidence and which on this appeal must be treated as established in the. appellant's favor. (*Clinchfield Fuel Co.* v. *Henderson Iron Works Co.*, 254 Fed. Rep. 411; *Healey* v. *Moran T. & T. Co.*, 253 Fed. Rep. 334; *Lehigh Valley R. R. Co.* v. *Dupont*, 128 Fed. Rep. 840; *Lehigh Valley R. R. Co.* v. *Delachesa*, 145 Fed. Rep. 617; *The Willem Van Driel, Sr.*, 252 Fed. Rep. 35, 37; *C., M. & St. P. Ry. Co.* v. *Minneapolis C. & C. Assn.*, 247 U. S. 490; *Interstate Tel. Co.* v. *B. & O. Tel. Co.*, 51 Fed. Rep. 49; 54 Fed. Rep. 50; *Koehler & Co.* v. *Reinheimer*, 26 App. Div. 1; *Holm* v. *Claus Lipsius Brewing Co.*, 21 App. Div. 204; *Hall* v. *Ochs*, 34 App. Div. 103; *Fuld* v. *Burr Brewing Co.*, 18 N. Y. Supp. 456; *Nat. Park Bank* v. *G. A. M. W. & S. Co.*, 116 N. Y. 281; *Hess* v. *Sloane*, 66 App. Div. 522; 173 N. Y. 616; *Holmes* v. *Willard*, 125 N. Y. 75; *Bacon* v. *Montauk Brewing Co.*, 130 App. Div. 737.) The

execution of the guaranty was within the authority of John Michel as vice-president and general manager. (*People* v. *N. R. Sugar Refining Co.*, 121 N. Y. 582; *Clinchfield Fuel Co.* v. *H. I. W. Co.*, 254 Fed. Rep. 411; *Oakes* v. *Cattaraugus Water Co.*, 143 N. Y. 430; *Sun P. & P. Assn.* v. *Moore*, 183 U. S. 642; *Martin* v. *Niagara Falls Paper Mfg. Co.*, 122 N. Y. 165, 175; *Martin* v. *Webb*, 110 U. S. 7; *Jenkins S. S. Co.* v. *Preston*, 186 Fed. Rep. 609; *Holmes* v. *Willard*, 125 N. Y. 75; *Barkin Const. Co.* v. *Goodman*, 221 N. Y. 156.)

*I. Maurice Wormser* and *David Bernstein* for respondent. Defendant corporation under its charter was without power to guarantee any account, and it follows that it is not bound by the guaranty sued upon. The guaranty " was clearly *ultra vires* of the purpose for which defendant was incorporated." (*Nat. Park Bank* v. *German-American Mut. Warehouse & Security Co.*, 116 N. Y. 281; *Filton* v. *Miller Brewing Co.*, 60 Hun, 582; *Berry* v. *Bates*, 24 Barb. 199; Clark on Corporations [3d ed.], 173–175; *Best Brewing Co.* v. *Klassen*, 185 Ill. 37; *Schwab* v. *Potter Co.*, 194 N. Y. 409; *Morris* v. *Weiner Co.*, 65 Misc. Rep. 18; *Doubleday, Page & Co.* v. *Schumaker*, 60 Misc. Rep. 227; *Carlaftes* v. *Goldmeyer Co.*, 72 Misc. Rep. 75; *Germania Safety Vault & Trust Co.* v. *Boynton*, 71 Fed. Rep. 797; *Ward* v. *Joslin*, 105 Fed. Rep. 224; 1 Clark & Marshall on Priv. Corps. 486, 487.) The execution of the guaranty in no event was within the authority of defendant's vice-president. (*Patterson* v. *White Star Towing Co.*, 85 N. Y. Supp. 359; *Alexander* v. *Cauldwell*, 83 N. Y. 480; *Utter* v. *Railroad Co.*, 6 Daly, 227; *Cosgray* v. *N. E. Piano Co.*, 22 App. Div. 455.)

ANDREWS, J.   The plaintiff was engaged in the chartering of scows.   One John Michel was the vice-president and general manager of the defendant and had full charge of its business affairs.   In its name, on July 27, 1914, he

signed an agreement that it would "guarantee the payment of bills for charter, * * * and labor for loading and unloading of all scows and dumpers chartered from C. F. Harms Company for our account, to be used in connection with Bond Development Company * * * at Bond and Third St. Board, Bklyn." The plaintiff claims that thereafter it did charter scows on account of the defendant to be used in connection with Bond Development Company to the value of $2,007, for which sum it asks judgment. The defense is that the scows were not furnished on account of the defendant but to two persons—Donelly and Odell — acting under the name of the Bond Development Company; that Michel had no authority to sign the agreement and that if he had it was an agreement that the defendant had no power to make.

Upon the issues thus defined the trial was had. At its close the complaint was dismissed on the merits and this action was affirmed by the Appellate Division. This affirmance seems to rest upon an opinion on a former appeal, where it was said that the guaranty was never authorized by the directors of the defendant and even "if it had been it was clearly *ultra vires* of the purpose for which defendant was incorporated." We think the courts below have erred and that a question of fact was presented upon which a jury must pass. In so deciding we give to the plaintiff the benefit of all testimony in its favor and of all inferences.

The certificate of incorporation of the defendant confers broad powers. Not only is it created to make and sell beer, but to cultivate and deal in hops; to make, buy, sell or store natural or artificial ice; to purchase, lease or build wharves in connection with its business; to purchase, mortgage, lease or convey real estate wherever situated; to acquire, license and sell any trade marks or patents; to make contracts of every sort and kind with any person or government, and finally, to do anything necessary or suitable to accomplish these objects "or which shall at

any time appear conducive or expedient for the protection or benefit of the corporation, either as holders of or interested in any property."

Doing business under this certificate it owned some land on which was its manufacturing plant and which had a water front on the Gowanus canal. On this front it constructed a dumping board. This seems to have been an elevated platform extending over the canal upon which carts might be driven and then unloaded into scows lying below. This board had been leased by the defendant and the rentals received by it had been turned into its general funds. The lease, however, had expired in April, 1914, and the defendant was again in possession of the property. Just how profits were or could be derived from the board is not clear, but the question is not material.

Such being the situation, John Michel had a conversation with a man named Donelly some time in June. It was suggested that Donelly, one Odell, Rogers, an employee of the defendant, and Michel should lease the board under the name of the Bond Development Company. The negotiations, however, failed. No lease was ever made. No firm was ever formed. No possession of the board was ever surrendered. Over it the defendant continued in sole control. Whatever business was done there was done by it under the supervision of its servant Rogers. Whatever profits were made were received by it.

But for this business it used the name that had been suggested in the talk with Donelly of Bond Development Company. Owning the board it was clearly entitled under its certificate to so use it as to gain an income from it. (*Clinchfield Fuel Co.* v. *Henderson Iron Works Co.*, 254 Fed. Rep. 411.) To so use it involved the hiring of scows in which refuse might be dumped and the hiring of tugs to move scows when full and return them when empty.

Under such conditions the plaintiff received an order in the name of the Bond Development Company to

furnish scows. Who the company was it did not know. As a business precaution, therefore, it inquired of John Michel. He told it the fact — that it was a trade name under which the defendant was engaged in the business of using the board. To avoid possible confusion later the guaranty was asked for and the paper in question was executed.

It is quite true that as a general rule a corporation may not guarantee the debts of a third person when its own business interests are not involved. (*National Park Bank of N. Y.* v. *German-Am. Mut. W. & Security Co.*, 116 N. Y. 281.) This is not such a case. No guaranty was in fact required. The Bond Development Company was in truth the brewing company. For the debts of the business the defendant was primarily liable. But we know of no reason why it might not also agree to pay these debts and why, if it did so, the promise might not be enforced. That is what the complaint seeks here. That is the point to which the testimony of the plaintiff is directed. That is the theory upon which a recovery is sought. Such a recovery is well within the issues presented.

If this be so, there can be no doubt as to the authority of John Michel to execute the paper. Vice-president and general manager of the defendant, having full charge of its business, making a contract for its benefit of a minor character in the usual course of business and which it might make, his act was well within his general powers. (*Oakes* v. *Cattaraugus Water Co.*, 143 N. Y. 430.)

Finally, the jury might find that the scows were chartered " on account " of the defendant " to be used in connection with Bond Development Company." All orders for scows were to come and did come from the defendant's officers or its employee in charge of the board. The proceeds from the use of board and scows were received by it. It paid all charges. Orders to move the scows were by it given to a towing company, and it paid the latter's bills. If there was delay in towing it remon-

strated.   When through with the scows the plaintiff
received notice from Michel or Rogers.   If the scows
were not properly loaded or dredging were needed com-
plaints were made to Michel and he gave the necessary
directions.   He also, when dissatisfied with Rogers, sought
to employ a new man to take charge of the board.   Bills
of the plaintiff while in the name of the development
company were delivered to the defendant.

The judgments appealed from must, therefore, be
reversed and a new trial granted, with costs to abide the
event.

HISCOCK, Ch. J., COLLIN, HOGAN, POUND and ELKUS,
JJ., concur; McLAUGHLIN, J., not sitting.

Judgments reversed, etc.